UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **Teamsters Local Union No. 100,** affiliated with the International Brotherhood of Teamsters, | : : : : |
| 2100 Oak Road Cincinnati, Ohio 45241 | : : : |
| Plaintiff, | Case No. 1:24-CV-89 : : |
| vs. | : : |
| **Sun Chemical Corporation,** | Judge _____ : : |
| 4526 Chickering Avenue Cincinnati, Ohio 45232 | : : : |
| Defendant. | : |

## COMPLAINT

Plaintiff, Truck Drivers, Chauffeurs and Helpers, Public Employees, Construction Division, Airlines – Greater Cincinnati/Northern Kentucky Airport and Miscellaneous Jurisdiction, Greater Cincinnati, Ohio, Local Union No. 100, an affiliate of the International Brotherhood of Teamsters, known informally as Teamsters Local Union No. 100 (hereinafter "Plaintiff," "the Union," or "Local 100"), files this Complaint against Defendant Sun Chemical Corporation (hereinafter "Defendant," "the Company," or "Sun") to confirm and enforce an arbitration award issued by a joint labor-management arbitration panel. Plaintiff alleges as follows:

1

**JURISDICTION**

1. Jurisdiction in this matter is based upon a federal question under the Labor Management Relations Act, 29 U.S.C. § 185, and 28 U.S.C. § 1331.

2. Venue properly is established in this District and Division, as the arbitration proceeding in question was held within the Southern District of Ohio, Western Division and both Local 100 and Sun Chemical conduct business in or around Cincinnati, Ohio.

**PARTIES**

3. Sun Chemical is an employer engaged in an industry affecting commerce as defined in the National Labor Relations Act, 29 U.S.C. §§ 152(2), (6), and (7). Sun Chemical maintains a place of business in Cincinnati, Ohio.

4. Local 100 is a labor organization as defined in 29 U.S.C. § 152(5) and is the exclusive representative of certain employees of Defendant. Local 100 maintains offices near Cincinnati, Ohio.

**STATEMENT OF THE CLAIM**

5. The Union and the Company have been parties to a series of collective bargaining agreements over a matter of decades. The current contract has effective dates from March 16, 2021 to March 15, 2025 (hereinafter "Agreement"). Relevant excerpts are attached hereto and made a part hereof as Exhibit A.

6. The Agreement contains a grievance procedure in Article 7 that sets forth the process for the filing and processing of a grievance if a bargaining unit employee believes that the Company has violated the Agreement. Section 3, Step 4 of that Article provides for a Joint Board to hear and adjudicate grievances if the matter is not resolved through meetings between the parties in Steps 1 through 3.

7. The Joint Board is convened on an as-needed basis and is comprised of three members appointed by Plaintiff and three members appointed by Defendant. (Exhibit A, p. 8). The Agreement specifically states that "[a]ll decisions of the Board shall be by secret ballot and are final and binding on the employee, the Union, and the Employer." Id.

8. If the Joint Board does not come to a majority decision (i.e., if it is "deadlocked"), then Local 100 has the right to submit the matter to arbitration before a neutral, third-party arbitrator. However, a majority decision by the Joint Board precludes this step, because such decision is final and binding on the parties. (Exhibit A, p. 8).

9. On August 8, 2023, Local 100 filed a grievance alleging that Sun Chemical had violated Article 12 and other applicable articles of the Agreement by failing to fill a porter position at its Drackett/Spring Grove building that was left vacant while the employee in that position was out on medical leave. A copy of the grievance is attached hereto and made a part hereof as Exhibit B.

10. The porter position grievance was processed in accordance with the procedures contained in Article 7 of the Agreement, culminating in a Step 4 hearing before the Joint Board. The Joint Board held a Step 4 hearing on September 5, 2023 to consider the grievance.

11. At the conclusion of the hearing, the Joint Board issued a decision by a majority vote upholding the grievance, requiring the Company to fill the position at the Drackett/Spring Grove building. The Joint Board did not issue a written decision, but in accordance with the parties' practice, each Board member voted on the question presented and the votes were tallied. Copies of the vote cards, on a single page, are attached as Exhibit C.

12. Under applicable law, the decision of the Joint Board is final and binding and fully enforceable to the same extent as an arbitration decision.

13. Sun Chemical has failed and refused to comply with the final and binding decision issued by the Joint Board on September 5, 2023.

14. On October 17, 2023, Local 100 sent a letter via email to Sun seeking compliance with the Joint Board's decision, a copy of which is attached as Exhibit D.

15. Sun responded by letter dated October 20, 2023, stating that it did not intend to fill the porter position, a copy of which is attached as Exhibit E.

16. In response, Local 100 sent another letter via email on October 23, 2023, again seeking compliance with the Joint Board's decision, a copy of which is attached as Exhibit F.

17. Despite these attempts to get Sun to comply, Sun has continued to ignore and refused to comply with the Joint Board's duly issued decision.

18. Sun's conduct in failing and refusing to comply with the Joint Board's final and binding decision is willful and in bad faith, entitling Local 100 to reasonable attorney fees and related costs and expenses of this litigation.

Local 100 hereby requests and prays for the following relief:

a. An Order from this Court enforcing the decision issued by the Joint Board on September 5, 2023;

b. An Order from this Court directing Defendant to comply with the decision issued by the Joint Board on September 5, 2023, including, but not limited to an Order requiring Defendant to fill the vacant porter position at the Drackett/Spring Grove Building and requiring Defendant to pay affected employees any back overtime and other back wages the employees would have earned had Defendant properly complied with the decision of the Joint Board;

4

c. An Order from this Court ordering Defendant to pay the attorney's fees, cost and expenses of the Plaintiff for its willful and bad faith conduct in refusing to comply with the final and binding decision of the Joint Board; and

d. Such other relief the Court deems just and proper.

Respectfully submitted,

**DOLL, JANSEN & FORD**

/s/ *Stephen R. Keeney*
Stephen R. Keeney - 0001617
111 West First St., Suite 1100
Dayton, Ohio 45402-1156
Phone: (937) 461-5310
Fax: (937) 461-7219
skeeney@djflawfirm.com

**ATTORNEY FOR PLAINTIFF
TEAMSTERS LOCAL UNION NO. 100**